WILCOX, respondent, *v.* DEER LODGE COUNTY, appellant.

POWER OF LEGISLATURE TO CREATE COUNTY INDEBTEDNESS FOR ROADS. The legislative assembly enacted a statute, approved February 11, 1876, which authorized and required the commissioners of Deer Lodge county to issue county warrants to certain persons to reimburse them for constructing a wagon road in the county. The road was a public highway on which the people of the county are accustomed to travel. A part of the expense of its construction has been paid by private subscription, but the remainder is unpaid. *Held,* that the road has been constructed for a municipal purpose and is beneficial to the people of the county, a nd that the statute is upon a rightful subject of legislation.

*Appeal from Second District, Deer Lodge County.*

THE writ of mandate was issued by KNOWLES, J.

A. E. MAYHEW, District Attorney, Second District, for appellant.

Municipal corporations act in a political character and exercise a part of the sovereignty of the State, and in a private character in which they exercise powers for the benefit of their citizens. Cooley on Taxation, § 482.

The legislature has no power to make a county pay or assume a debt of another. *Hampshire* v. *Franklin*, 16 Mass. 76; *Richland* v. *Lawrence*, 12 Ill. 1; Cooley on Taxation, 484 *et seq.* Courts will not enforce such a law, if passed. It is not upon a rightful subject of legislation. Organic Act, § 6.

Clagett & Dixon, for respondent.

The legislature has exclusive and unrestrained control over corporations like counties. Laws for the relief of individuals are common, and generally admitted to be within the power of the legislature to enact. Dill. on Mun. Corp., §§ 43, 44; A. and A. on Corp., § 31; *Laramie Co.* v. *Albany Co.*, 92 S. C. 307; *Blanding* v. *Burr*, 13 Cal. 350; *People* v. *Alameda Co.*, 26 id. 641; *N. V. R. R. Co.* v. *Napa Co.*, 30 id. 435; *People* v. *San Francisco*, 36 id. 595; *Sinton* v. *Ashbury*, 41 id. 525; *San Francisco* v. *Canavan*, 42 id. 541; *Winbigler* v. *Los Angeles*, 45 id. 36.

Wade, C. J. On February 11, 1876, the legislative assembly enacted the following statute:

"Sec. 1. That the board of county commissioners of Deer Lodge county are hereby authorized and required to issue to the following named persons, their heirs or assigns, warrants on the general fund of said county to reimburse said parties for labor done, materials furnished, and moneys expended in the construction of the wagon road leading from Deer Lodge city to Pioneer city in said county of Deer Lodge, constructed under the supervision of John J. Dounhouer, in such sums as may hereafter be found due them as provided for under section 2 of this act. The names of said parties are: John J. Dounhouer, Jere. B. Wilcox, Charles Bielenberg, G. Higgins, E. Goodnight, John Blackledge, P. Gilfoy, J. Simmitt, W. Brainard, and A. Gavon.

"2. Before any warrants shall be issued by the commissioners of said county under the provisions of this act, the parties named therein, or their heirs or assigns, shall make affidavit before some officer authorized by law to administer oaths, that such labor has been performed, or such materials furnished, or such moneys expended by them in the construction of said road, and that the same has never been paid. Upon the filing of such affidavits with

the clerk of the board of county commissioners, it shall be the duty of the said board of commissioners, at their first regular meeting thereafter, to issue to the party or parties making such affidavit, warrants on the general fund of said county to the amount of their respective claims. *Provided*, that this act shall not be construed to authorize said commissioners to issue warrants to any persons not herein named.

"Sec. 3. All acts and parts of acts in conflict with the provisions of this act are hereby repealed.

"Sec. 4. This act shall take effect and be in force from and after its passage."   Sts. 9th Sess. 170.

The case was tried upon the following agreed statement of facts : That the foregoing law was duly passed and approved ; that the plaintiff is named in said law; that the plaintiff, in 1870, furnished supplies and materials which were used in constructing the road described in said law; that the road was not built, or contracted to be built or constructed by said Deer Lodge county, but was built by private subscription, which proved insufficient to pay for the work ; that the road was built on the public domain and has been a public highway since its completion, about 1871 or 1872 ; that there was due plaintiff, June 23, 1870, a balance for said supplies and materials, $229.10, which has not been paid ; that plaintiff made the proper affidavit respecting the said supplies and materials, and presented his account to the county commissioners in March, 1876, and demanded a warrant therefor; that the commissioners then refused and still refuse to issue any warrants for said account ; and that said commissioners " do not dispute the furnishing, by plaintiff, of said supplies or materials for said road, nor the value thereof, nor the non-payment of the same, nor the fact that the plaintiff has complied with said law herein referred to in presenting his account, but contend that " they are " not compelled, legally under said law, to pay said claim, or any part of it, or order the issue of warrants therefor."

The court thereupon ordered that a writ of peremptory mandamus issue to the appellant commanding the board of county commissioners to issue to the respondent a warrant on the general fund of the county for $229.10.

The facts on which this case was tried present for consideration

the important question respecting the power of the legislature to impose a debt upon a municipal corporation without the consent of its people. The spirit of our institutions and the sources from which we derive political rights seem to forbid the exercise of this authority by the law-making power. But municipal corporations are subordinate parts of the State and invested with limited powers. The legislature in granting such powers does not divest itself of any power over the inhabitants of the district which it possessed before the charter was granted. In *Laramie County* v. *Albany County*, 92 S.C. 308, Mr. Justice CLIFFORD says: "Counties, cities and towns are municipal corporations, created by the authority of the legislature; and they derive all their powers from the source of their creation, except where the constitution of the State otherwise provides. Beyond doubt, they are, in general, made bodies politic and corporate, and are usually invested with certain subordinate legislative powers, to facilitate the due administration of their own internal affairs, and to promote the general welfare of the municipality. They have no inherent jurisdiction to make laws, or to adopt governmental regulations; nor can they exercise any other powers in that regard than such as are expressly or impliedly derived from their charters, or other statutes of the State."

"Trusts of great moment, it must be admitted, are confided to such municipalities; and, in turn, they are required to perform many important duties, as evidenced by the terms of their respective charters. Authority to effect such objects is conferred by the legislature; but it is settled law, that the legislature, in granting it, does not divest itself of any power over the inhabitants of the district which it possessed before the charter was granted. Unless the constitution otherwise provides, the legislature still has authority to amend the charter of such a corporation, enlarge or diminish its powers, extend or limit its boundaries, divide the same into two or more, consolidate two or more into one, overrule its action whenever it is deemed unwise, impolitic, or unjust, and even abolish the municipality altogether, in the legislative discretion. Cooley on Const. (2d ed.) 192."

Has the legislature the power to create a debt and impose it upon the people of a county without their express or implied con-

sent? Debts and obligations depend generally for their validity upon the consent and agreement of the parties, or are implied from facts and circumstances deemed equivalent thereto. When thus contracted, the law determines the rights and liabilities incident thereto. There is another class of demands, both in private and public affairs, which should in good conscience be paid, but the law furnishes no remedy to enforce their payment. In behalf of the last class, the legislature has sometimes interfered to compel municipal corporations to pay demands when they were not legally liable. The moral obligation to pay and the failure of a legal remedy seem to be the foundation for legislative action in such cases. But the State only interferes in favor of an honest demand, which the corporation ought in duty to pay, and assumes that the people consent thereto. To place the demand within the legitimate scope of legislative interposition, it must have arisen in accomplishing some object, beneficial to the people and strictly of a municipal, not private character.

In *Sinton* v. *Ashbury*, 41 Cal. 530, Mr. Justice CROCKETT says: "But whilst it is conceded in nearly all the cases that a municipal corporation is a subordinate part of the State government, organized for the more convenient administration of the local affairs of a particular district, and deriving its powers wholly from the legislature, to whose general control and supervision it is subject, I am not aware that any case has gone so far as to hold that the legislature may devote the funds of a municipal corporation to purposes confessedly private and having no relation to municipal affairs. But I deem it unnecessary for the purpose of this decision to review the authorities on this point, or to attempt to define with precision the limits of the legislative authority over the property and funds of a municipal corporation. It is established by an overwhelming weight of authority, and, I believe, is conceded on all sides, that the legislature has the constitutional power to direct and control the affairs and property of a municipal corporation for *municipal purposes*, provided it does not impair the obligation of a contract, and by appropriate legislation may so control its affairs as ultimately to compel it, out of the funds in its treasury, or by taxation to be imposed for that purpose, to pay a demand when properly established, which in good conscience it

ought to pay even though there be no legal liability to pay it. *Beals* v. *Amador Co.*, 35 Cal. 624; *Blanding* v. *Burr*, 13 id. 343; *People* v. *San Francisco*, 11 id. 206; *Sharp* v. *Contra Costa Co.*, 34 id. 284; *People* v. *McCreery*, id. 432; *People* v. *Alameda Co.*, 26 id. 641."

In *Blanding* v. *Burr*, *supra*, 349, Mr. Justice FIELD says: "The question presented is not one of power in the legislature to impose upon the corporation the payment of claims for which no consideration has been had, but of power to provide for claims meritorious in their character, for which an equivalent has been received, and from the payment of which the corporation could only escape upon strict technical grounds. That the legislature can provide for the payment of claims, invalid in the forum of the law, but equitable and just in themselves, would seem unquestionable. It may become, for example, of the highest importance to a municipal corporation that counsel should be employed to defend its rights of property assailed by different parties, but its charter may not confer authority to employ the counsel or to meet his charges. Professional services rendered under such circumstances would not constitute a legal charge upon the corporation, but that it would be competent for the legislature to authorize the payment of the charge, and the imposition of a tax for that purpose, no one will deny."

From these authorities, which seem to be conclusive on the subject, three things must concur in order to make the respondent's claim a proper one for the invocation of legislative aid against the county. First. His money must have been expended for a municipal purpose. Second. Its expenditure must have been beneficial to the people of the county. Third. The demand must be properly established. Does the case presented in the agreed statement of facts come within these requirements?

The public highways of a county are peculiarly within the supervision of the municipal authorities, and moneys expended for their construction are moneys expended for municipal purposes. It appears that the people of Deer Lodge and Pioneer cities, being desirous of facilitating the means of communication between these places, raised by subscription a sum of money to construct the wagon road, which has been mentioned. The road

was built, but the subscription did not cover all the expenses and a portion of the indebtedness remains unpaid. This road, with all others then in existence in the Territory in 1872, was declared a public highway by the legislative assembly. Cod. Sts. 541, § 3. The statement of facts shows that this road is a public highway upon which the people of Deer Lodge county are accustomed to travel. Therefore the county is beneficially interested in the road and the people treat it as a public highway. There arises a moral obligation upon the part of the county to pay for the municipal benefits it has derived and is enjoying from the enterprise and liberality of its citizens. The county has received the benefits of all the subscription money, which was a gift, and the legislative assembly, believing that the county ought to pay the remaining indebtedness contracted in the construction of this road, has rightfully exercised its power in passing the foregoing act providing for such payment.

*Judgment affirmed.*