CITY OF BOZEMAN, a Municipal Corporation, Plaintiff and Respondent, v. RALPH FREDERICK RAMSEY, Defendant and Appellant.

No. 10172.
Submitted March 6, 1961. Decided May 15, 1961.
362 P.2d 206.

Morrow, Nash & Thompson, Donald A. Nash, G. Page Wellcome, Bozeman, for appellant. Donald A. Nash argued orally.

Lovelace, Horkan & Berg, Bozeman, for respondent. Ben Berg, Jr., Bozeman, argued orally.

MR. JUSTICE ADAIR delivered the Opinion of the Court.

This is an appeal taken by the defendant, Ralph Frederick Ramsey, from a judgment of the District Court for Gallatin County, entered on a jury's verdict finding Ramsey guilty of operating a motor vehicle on East Main and North Rouse Streets in the City of Bozeman while under the influence of intoxicating liquor and in violation of the City's Ordinance No. 801.

*Arrest.* On Saturday, August 29, 1959, Ralph Frederick Ramsey, while driving a Buick automobile on the streets of the City of Bozeman, Montana, was apprehended by Robert Johnson, a city police officer and promptly taken to the City of Bozeman police court where the arresting officer reported and charged Ramsey with operating a motor vehicle within the corporate limits of the City of Bozeman, while under the influence of intoxicating liquor, in violation of section 1 of Bozeman Ordinance No. 801.

*Release on Bond.* On the same date, August 29, 1959, the police judge set 8:30 o'clock on Monday morning, August 31, 1959, for Ramsey's arraignment and fixed his appearance bond at $200. Ramsey deposited in police court as his bail the $200, whereupon he was promptly released from custody with orders to appear before the police judge on Monday morning, August 31, 1959, for arraignment.

R.C.M. 1947, § 94-100-41, provides: "The defendant *at any time after his arrest,* and before conviction may be admitted to bail. *The provisions* of this code relative to *bail are applicable to bail* in justices' or *police courts.*" Emphasis supplied.

On August 31, 1959, Ramsey appeared in the police court at the time appointed for his arraignment. He was accompanied by his counsel who announced that his appearance there was "special" to make objection to the whole proceeding on the grounds: (1) That no warrant had been issued for Ramsey's arrest; and (2) that there was no complaint on file in the cause.

*Amended Complaint Filed and Served.* Thereupon on motion

of the city attorney for Bozeman and leave granted by the police judge, an amended complaint, duly subscribed and sworn to by Robert Johnson, the arresting police officer, was on that day, August 31, 1959, filed in the police court and further hearing in the cause was continued to September 3, 1959, on which latter date Ramsey, accompanied by his counsel, appeared before the police judge where, in open court, the defendant was personally served with a copy of the amended complaint. See R.C.M. 1947, § 94-100-10.

The record before this court shows that upon being so served, the defendant, in open court and in the presence of his counsel, waived the reading of the amended complaint and also waived the formal particulars of the arraignment.

*Motion to Dismiss Amended Complaint.* Also on September 3, 1959, Ramsey's counsel, in open court, interposed a motion to dismiss the amended complaint on the alleged grounds: (1) That no warrant of arrest had been issued; (2) that there can be no amended complaint to the purported complaint theretofore filed which Ramsey's counsel contended amounted to a nullity; and (3) that Bozeman Ordinance No. 801, while purporting to have been adopted as an emergency measure, was passed at a time when there was no emergency whatever and at a time when only the State of Montana had the power and authority to deal with and hear prosecutions for the crime of driving a motor vehicle while under the influence of intoxicating liquor.

After hearing the oral arguments of counsel on defendant's motion to dismiss the amended complaint the police judge, on September 8, 1959, denied the motion and ordered that Ramsey's arraignment be reset for September 11, 1959.

*Demurrer to Amended Complaint.* On September 11, 1959, at the time set for Ramsey's arraignment, his counsel served and filed a demurrer to the amended complaint contending: (1) That the police court has no jurisdiction of the offense

charged; and (2) that the amended complaint fails to state facts sufficient to constitute a public offense.

Defendant's counsel argued that the city police court had no jurisdiction of the offense charged in the amended complaint contending: (a) That Chapter 201, Montana Session Laws of 1957, conferring upon municipalities *concurrent jurisdiction* in drunken driving prosecutions is unconstitutional; (b) that Ordinance No. 801 of the City of Bozeman, is invalid; and (c) that no warrant for the arrest of the defendant Ramsey was ever issued.

Ramsey's above demurrer was set for hearing for September 18, 1959, on which date it was fully argued by counsel for the respective parties and taken under advisement.

On September 22, 1959, the police judge made an order denying defendant's demurrer and directing that the defendant appear in police court on September 30, 1959, to plead to the amended complaint.

*Alternative Writ of Prohibition.* On September 23, 1959, being but seven days before he was to appear in police court to plead to the amended complaint, the defendant Ramsey, as petitioner, on petition filed that day in the District Court for Gallatin County, Montana, in district court cause No. 14205, procured the issuance out of such district court and the service upon the respondents named in such petition, of an alternative writ of prohibition directed to: The Police Court of the City of Bozeman, County of Gallatin; State of Montana, and Robert M. Holter, Judge thereof, and to Howard Erwin, Arnold H. Swanson, and Oswald E. Berg, Jr., Commissioners of the City of Bozeman, commanding that they, each and all, refrain from any further proceedings against the defendant, Ralph Frederick Ramsey under the amended complaint then pending in police court action No. 24-17840, until the further order of the district court and that on a day certain, the named respondents show cause in the district court for Gallatin County

why they should not be absolutely restrained from any further proceedings in said police court action.

*Writ Quashed.* Thereafter, on motion of the above-named respondents the district court made an order quashing the alternative writ of prohibition and terminating district court proceeding No. 14205 wherein such writ had issued.

*The Plea.* It was not until January 22, 1960, that the defendant Ramsey entered his plea of not guilty to the charges set forth in the amended complaint that had been filed against him on August 31, 1959, in police court action No. 24-17840. Upon the entering of such plea the police judge promptly set a date for defendant's trial.

*Trial in Police Court.* On February 5, 1960, police court action No. 24-17840 came regularly on for trial. At the outset of such trial the defendant Ramsey, in open court, formally waived a trial by jury and the cause proceeded to trial and it was tried before the police judge sitting without a jury.

At the trial Police Officer Hanson and Police Officer Robert Johnson testified on behalf of the City of Bozeman and the City rested its case. While the record before this court shows that thereupon the defendant Ramsey rested his case such record fails to show that the defendant either testified or that he introduced any evidence whatever at his trial in the police court.

*Police Court Judgment.* On February 5, 1960, Ramsey was found and adjudged guilty as charged in the amended complaint of the offense of driving a motor vehicle within the corporate limits of Bozeman, while intoxicated. The defendant waived the time for the pronouncement of judgment and sentence whereupon he was sentenced to pay a fine of $200.

*Appeal to District Court.* Upon the pronouncement of the Police Court's judgment on February 5, 1960, defendant's counsel then and there gave proper and timely notice of his appeal to the District Court of the Eighteenth Judicial District of the State of Montana, in and for the County of Gallatin

and the police judge set the amount of defendant's appeal bond which bond the defendant supplied.

On an appeal taken from a police court to a district court the entire case "must be tried anew in the district court", R.C.M. 1947, § 94-100-38, on the papers and files in the police court unless the district court allows other or amended pleadings.

On defendant's appeal to the District Court, Ramsey's counsel, on February 17, 1960, caused to be filed in that court the papers that had been filed and the docket entries that had been made in police court action No. 24-17840, which included, *inter alia:* (1) Defendant's notice of appeal to the District Court; (2) the amended complaint of August 31, 1959; and (3) a copy of the police court docket entries of the proceedings had and done in that court from August 29, 1959, to February 16, 1960.

On February 23, 1960, Ramsey's counsel filed in the District Court a demurrer to the City of Bozeman's amended complaint that had been filed in the Police Court on August 31, 1959. The demurrer so filed in the District Court urged: (1) That the City of Bozeman and its Police Court had and have no jurisdiction of the offense charged in the amended complaint; (2) that the facts stated in the amended complaint fail to constitute a public offense; and (3) that the proceedings in the Police Court were defective in: (a) that no warrant for defendant's arrest was issued by the Police Court; (b) that the City's first complaint against the defendant was defective in that it failed to name the defendant Ramsey as committing any crime and that there is no authority in law for the subsequent filing of the City's amended complaint of August 31, 1959; (c) that Bozeman Ordinance No. 801 is in conflict with existing state law covering the same subject; (d) that Bozeman Ordinance No. 801 was not properly adopted as provided by law; and (e) that Bozeman Ordinance No. 801 is unconstitutional.

It is quite apparent that these are substantially the same objections and contentions registered by defendant's counsel in the Police Court in:

(1) Counsel's special appearance of August 31, 1959, in the police court action;

(2) Counsel's motion to dismiss the amended complaint made in police court on September 3, 1959; and

(3) Counsel's demurrer to the amended complaint which the police judge overruled and denied on September 22, 1959.

By order made March 10, 1960, Ramsey's above demurrer was overruled and on March 30 and 31, 1960, the defendant was tried *anew* in the District Court before a jury of twelve on the charge made and stated in the City's amended complaint of August 31, 1959.

*Verdict.* The jury's verdict returned on March 31, 1960, found:

"We, the Jury * * * find the Defendant guilty as charged * * * and leave punishment to be fixed by the Court."

*District Court's Judgment.* The judgment entered by the District Court upon the trial *de novo* in part, recites:

"* * * On March 31, 1960, after trial and submission of the case to the jury, the jury was returned to open court and found the defendant, Ralph Frederick Ramsey, guilty of the crime of misdemeanor, to-wit, 'driving a motor vehicle in the City of Bozeman while under the influence of intoxicating liquor', and left the fixing of the punishment to the Court, whereupon the Court set Tuesday, April 5, 1960, as the time set for the pronouncement of judgment against the defendant;

"* * * That whereas the said Ralph Frederick Ramsey having been duly convicted in open Court of the crime of misdemeanor, to-wit, 'driving a motor vehicle in the City of Bozeman while under the influence of intoxicating liquor, on or about the 29th day of August 1959.'

"It is * * * Adjudged * * * that said defendant, Ralph Frederick Ramsey, pay a fine of Three Hundred Dollars

($300.00) and serve a sentence of ninety (90) days in the County Jail of Gallatin County, Montana, in lieu of confinement in the City Jail of the City of Bozeman, which said fine of Three Hundred Dollars ($300.00) shall be paid to the Clerk of the District Court for proper remission to the City of Bozeman, and in the event said fine is not paid, the said Ralph Frederick Ramsey shall be further imprisoned in the County Jail for a period of one (1) day for each Two Dollars ($2.00) of his fine.

"It is Further Ordered, Adjudged and Decreed that eighty-four (84) days of the jail sentence is hereby suspended under the following terms and conditions:

"(1) That in accordance with the statutes of the State of Montana made and provided, the defendant shall be confined to the County Jail of the County of Gallatin, State of Montana, for six (6) days, to-wit, April 9, 10, 16, 17, 23 and 24 in the year 1960.

"(2) That the defendant is to pay to the County of Gallatin, State of Montana, all expenses of his confinement in said County Jail."

This is an appeal by Ramsey to this court from the above judgment of the District Court so entered upon a jury's verdict and following a trial *de novo*.

The appellant Ramsey has assigned but two specifications of error.

*Specification No. 1.* Appellant's first specification is that neither the Police Court of the City of Bozeman nor the District Court for Gallatin County had jurisdiction over the appellant.

Appellant asserts that Bozeman Ordinance No. 801 was passed pursuant to authority granted by the legislature in Chapter 201 of the 1957 Session Laws and that such Chapter 201 constitutes "an unconstitutional delegation of the police power in that it pertains to a matter which is of state-wide concern and there are already state statutes which provide for

punishment of the crime of driving while under the influence of intoxicating liquor.''

The City of Bozeman is a municipal corporation under the commission-manager form of government.

In Montana the creation or incorporation of a municipality is a legislative function and, subject to *state constitutional limitations, the power of the state legislature over municipalities is complete.*

In 37 Am.Jur., § 7, p. 626, it is said:

''The power to create or establish municipal corporations * * * to reorganize their governments, or to dissolve or abolish them altogether is a political function which rests solely in the legislative branch of the government, and in the absence of constitutional restrictions, the power is practically unlimited.''

The early case of People ex rel. Boardman v. City of Butte, 4 Mont. 174, at pages 206, 207, 1 P. 414, at page 415, recognized that it is a ''well-settled principle that the legislature may create municipal organizations and governments upon its own motion, consulting only its own views as to the propriety or necessity of such action, and without the consent and against the protest of those upon whom such government is to take effect.* * *

''It is within the competency of a territorial legislature to create municipal corporations. Its authority extends to all rightful subjects of legislation. It may provide municipal courts, although by the organic act it is declared that the judicial power of the territory shall be vested in a supreme court, district courts, probate courts, and justices of the peace.''

In the year 1874 by its enactment of ''A Bill for an act to incorporate the town of Bozeman'', approved February 13, 1874, the Eighth Regular Session of the Legislature of the Territory of Montana authorized the inhabitants of the town of Bozeman to organize as a corporate body, defined the boundaries of the town, provided for a mayor, town council and other officers and clothed the town's officials with much-

power and authority to enact ordinances. Session Laws of 1874, at pp. 158-171.

In Wilcox v. Deer Lodge County, 2 Mont. 574, at page 577, the court observed that "municipal corporations are subordinate parts of the State."

In City of Worcester v. Worcester Consolidated Street Ry. Co., 196 U.S. 539, 548, 25 S.Ct. 327, at page 329, 49 L.Ed. 591, at page 595, it is said: "A municipal corporation is simply a political subdivision of the state and exists by virtue of the exercise of the power of the state through its legislative department. * * * The city is the creature of the state."

In Board of Commissioners of Tippecanoe County v. Lucas, 93 U.S. 108, at page 114, 23 L.Ed. 822, at page 824, it is said: "Municipal corporations are mere instrumentalities of the State, for the convenient administration of government; and their powers may be qualified, *enlarged* or withdrawn at the pleasure of the Legislature." Emphasis supplied.

In Mount Pleasant v. Beckwith, 100 U.S. 514, at page 524, 25 L.Ed. 699, at page 701, it is said: "Counties, cities and towns are municipal corporations created by the authority of the legislature, and they derive all their power from the source of their creation, except where the Constitution of the State otherwise provides."

The Constitution of Montana provides:

Article XVI. "Sec. 7. The legislative assembly may, by general or special law, provide any plan, kind, manner or form of municipal government for * * * cities and towns * * * and fix and define boundaries of the territory so governed * * * provided, however, that no form of government permitted in this section shall be adopted or discontinued until after it is submitted to the qualified electors in the territory affected and by them approved."

Article VIII, "Sec. 24. The legislative assembly shall have power to provide for creating such police and municipal courts and magistrates for cities and towns as may be deemed neces-

sary from time to time, who shall have jurisdiction in all cases arising under the ordinances of such cities and towns, respectively; such police magistrates may also be constituted ex-officio justices of the peace for their respective counties."

Article III, "Sec. 8. Criminal offenses of which justice's courts and municipal and other courts, inferior to the district courts, have jurisdiction, shall, in all courts inferior to the district court, be prosecuted by complaint. * * *"

*The State's Judicial Power.* The first section of Article VIII of the Constitution of Montana provides: "Section 1. *The judicial power of the state* shall be vested in the senate sitting as a court of impeachment, in a supreme court, district courts, justices of the peace, *and such other inferior courts as the legislative assembly may establish in any incorporated city or town.*" Emphasis supplied.

Clearly under the above section of the Constitution of Montana, a goodly portion of *"the judicial power of the state"* is lawfully vested in and exercised by the municipal courts of the state one of which "inferior courts", "the legislative assembly may", and it did, establish in the duly incorporated City of Bozeman.

In 37 Am.Jur., Municipal Corporations, § 279, p. 907, note 13, it is said: *"A municipality,* in exercising the police power granted to it by the legislature, *acts as the agent of the state,* and the legislature may at any time change its agent, and by another statute provide that a power previously exercised by the municipality shall be exercised by some other agency." Emphasis supplied.

*General Grant Of Power.* R.C.M. 1947, § 11-3210, is a general grant of power to any city organized under the commission-manager plan to make and enforce local police and other regulations and to pass such ordinances as may be expedient for maintaining and promoting peace, good government, and welfare of the municipality, and for the performance of the functions thereof. Section 11-3210 further provides that

the municipality organized under the commission-manager plan "shall have all powers that now are or hereafter may be granted to municipalities by the constitution or laws of Montana; and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed by this act, or when not prescribed therein, in such manner as shall be prescribed by the ordinances or resolutions of the commission."

R.C.M. 1947, § 11-901, is also a general grant of power to the city or town council: "To make and pass all by-laws, ordinances, orders, and resolutions, not repugnant to the constitution of the United States or of the state of Montana, or of the provisions of this title [Title 11, Cities and Towns, Chapter 9, §§ 11-901 to 11-989, R.C.M. 1947.], necessary for the government or management of the affairs of a city or town, for the execution of the powers vested in the body corporate, and for carrying into effect the provisions of this title."

*Uniform Act Regulating Traffic (1955).* In 1955 the 34th Montana State Legislature enacted Chapter 263, pp. 622-691, Session Laws of 1955, known as the "Montana Uniform Act Regulating Traffic on Highways", which Chapter contains 159 separately numbered sections and became effective from and after July 1, 1955.

*Amendment of Uniform Act (1957).* In 1957, the 35th Montana State Legislature enacted Chapter 201, pp. 452-456, Session Laws of 1957, amending sections 27, 28, 39 and 40 of the "Uniform Act Regulating Traffic on Highways" being Chapter 263, Session Laws of 1955, by enacting and expressly adding new provisions to the police powers theretofore granted to the local authorities with respect to streets and highways under their jurisdiction.

Section 2 of Chapter 201, Laws of 1957, pp. 453 and 454 amended Section 28 of Chapter 263, Laws of 1955, to read as follows:

"Section 28. *Powers of Local Authorities.* (a) The provisions of this act shall not be deemed to prevent local authorities

with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:

\*　\*　\*　\*　\*　\*　\*　\*

"12. *Regulating or prohibiting any person who is under the influence of intoxicating liquor from driving or being in actual physical control of any vehicle within the incorporated limits of any city or town.*

"13. *Regulating or prohibiting the driving of vehicles by any person in a willful or wanton disregard for the safety of persons or property within the incorporated limits of any city or town.*

"14. *Adopting such other traffic regulations as are specifically authorized by this act.*"

Section 3 of Chapter 201, Laws of 1957, amended section 39 of Chapter 263, Laws of 1955, to read as follows:

"Section 39. *Persons Under the Influence of Intoxicating Liquor or of Drugs.* (a) It is unlawful and punishable as provided in paragraph (c) of this section for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this state.

\*　\*　\*　\*　\*　\*　\*　\*

" ' (c) Every person who is convicted of a violation of this section will be punished by imprisonment for not more than six (6) months, or by fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00), or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than thirty (30) days nor more than one (1) year, or in the discretion of the court, a fine of not less than three hundred dollars ($300.00) nor more than one thousand dollars ($1,000.00) or by both such fine and imprisonment.'

" (d) *Each and every municipality in this state is hereby given authority to enact the foregoing paragraphs (a), (b), and (c) of this section, with the word 'state' in the first sentence of paragraph (b) changed in each instance to read 'municipality',*

*as an ordinance, and is hereby given jurisdiction of the enforcement of said ordinance, and of the imposition of the fines and penalties therein provided."*

Chapter 201, Laws of 1957, was approved on March 9, 1957. The concluding sections thereof read:

"Section 5. All acts and parts of acts in conflict herewith are hereby repealed.

"Section 6. This act shall be in full force and effect from and after its passage and approval."

■ *Concurrent Jurisdiction.* Chapter 201, Session Laws of 1957, is a specific and express grant to municipal corporations of *concurrent jurisdiction* in the matter of regulating, prohibiting and punishing the driver of any motor vehicle within the incorporated limits of any city or town by any person who is under the influence of intoxicating liquor.

*Bozeman City Ordinance No. 801.* On August 7, 1957, being approximately five months subsequent to the effective date of Chapter 201, Laws of 1957, and in the exercise of the police power therein expressly granted to cities and towns, the City of Bozeman passed and adopted Ordinance No. 801 which, so far as pertinent here, provides:

"Section 1. Persons Under the Influence of Intoxicating Liquor or of Drugs.

"(a) It is unlawful and punishable as provided in paragraph (c) of this Section for any person who is under the influence of intoxicating liquor to drive or to be in actual physical control of any vehicle within this municipality.

"(b) It is unlawful and punishable as provided in paragraph (c) of this Section for any person who is an habitual user of or under the influence of any other drug to a degree which renders him incapable of safely driving a vehicle, to drive a vehicle within this municipality. The fact that any person charged with a violation of this paragraph is or has been entitled to use such drug under the laws of this state or munici-

pality shall not constitute a defense against any charge of violating this paragraph.

"(c) Every person who is convicted of a violation of this section will be punished by imprisonment for not more than six (6) months, or by fine of not less than fifty dollars ($50.00), nor more than five hundred dollars ($500.00), or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than thirty (30) days nor more than one (1) year, or in the discretion of the court, a fine of not less than three hundred dollars ($300.00) nor more than one thousand dollars ($1,000.00), or by both such fine and imprisonment.

"(d) Whenever it appears reasonably certain to any police officer that any person under the influence of, or affected by the use of, intoxicating liquor or of any drug or narcotic is about to operate a vehicle in violation of paragraphs (a) or (b) of this section, the officer may take reasonable measures to prevent any such person from so doing, either by taking from him the keys of such vehicle and locking the same, or by some other appropriate means. In any such case, the officer shall immediately report the facts to the police department and shall, as soon as possible, deposit the keys or other articles, if any, taken from the vehicle or person with the police department. Such keys or other articles may be returned to any such person upon his demand and proper identification of himself when it appears that he is no longer under the influence of intoxicating liquor, drug or narcotic.

*    *    *    *    *    *    *    *

"Section 4. This Ordinance is hereby declared to be an emergency measure, and immediately necessary for the preservation of peace, health and safety of the public, and shall be in full force and effect from and after its passage by the City Commission of the City of Bozeman."

Subdivisions lettered (a) and (c) of Section 1 of Bozeman Ordinance No. 801, under which the defendant Ramsey's

prosecution was had, are substantially the same as subdivisions lettered (a) and (c) of Section 3 of Chapter 201, Session Laws of 1957 at pp. 454 and 455, and in subdivision lettered (d) of Section 3 of said Chapter 201 express authority is granted to each and every municipality in the State of Montana to enact, *inter alia,* paragraphs lettered (a) and (c) of Section 3 of said Chapter 201 as an ordinance and such municipalities were expressly *"given jurisdiction of the enforcement of said ordinance, and of the imposition of the fines and penalties therein provided."*

It is quite obvious that Bozeman Ordinance No. 801 does not conflict, nor is it inconsistent with either the Constitution of Montana or the state statutes, to-wit, Chapter 263, Laws of 1955, pp. 622-691, as amended by Chapter 201, Laws of 1957, pp. 452-456.

As was said by this court in State ex rel. City of Bozeman v. Police Court, 68 Mont. 435, at page 447, 219 P. 810, at page 814:

"The ordinance appears to be proof against any  *  *  * attacks made upon it. Its validity will be presumed in the first instance (2 McQuillin on Municipal Corporations, § 794), and until that presumption is overcome it is the duty of the police court to uphold it."

*Delegation of Police Power.* We find nothing in the Constitution of Montana to support the appellant Ramsey's contention that Chapter 201, Session Laws of 1957, "was an unconstitutional delegation of the police power" simply because "it pertains to a matter which is of state-wide concern and there are already state statutes which provide for punishment of the crime of driving while under the influence of intoxicating liquor."

In 37 Am.Jur., Municipal Corporations, § 279, at pp. 905-907, it is said:

"*  *  *  In accordance with the rule that vesting local municipal bodies with power to legislate on matters of local

concern is not a violation of the doctrine forbidding delegation of legislative power, it is well settled that the delegation of legislative police power over a limited section of the state to a municipal corporation is constitutional. A municipality may derive power to enact a police ordinance from several different grants of power. It need not depend solely on any single clause or section of a statute conferring power, since the authority to adopt such ordinance may be derived from a single grant or from a combination of enumerated powers."

Again in 37 Am.Jur., Municipal Corporations, § 287, at p. 924, it is said:

"Where the state legislature has expressly authorized the legislative body of the municipality to exercise certain police powers, it is difficult to see how there can be a conflict between state law and a municipal enactment which is fully authorized by the state Constitution where it does not conflict with a general law."

In State v. Poynter, 70 Idaho 438, 220 P.2d 386, 388, the defendant Poynter was charged in the police court of driving an automobile on the streets of Pocatello while under the influence of intoxicating liquor. On his plea of not guilty Poynter was tried in the police court and found guilty. He appealed to the district court where he was tried anew and again found guilty. From the judgment of conviction in the district court Poynter appealed to the Idaho Supreme Court which, in affirming the district court's judgment, said, *inter alia:*

"Appellant assigns as error and contends:

"The ordinance under which the proceedings were had is invalid, unconstitutional and void and there is no authority for a municipality to pass such an ordinance since the state laws of the State of Idaho have covered the entire field attempted to be covered by the ordinance.

"The City of Pocatello is a municipal corporation of the first class so declared by proclamation dated February 4, 1921,

and possesses the power of cities and villages and such additional power as has been conferred upon it by law. * * *

"Driving a motor vehicle on any highway within this state while under the influence of intoxicating liquor is made an offense under the state law. Sec. 49-502, I.C.

"The ordinance under which the prosecution was had is in substance the same as Sec. 49-502, I.C., and under the state laws, the offense is a misdemeanor triable· in the probate or justice courts, and the ordinance in question does not conflict, nor is it inconsistent with the state statute.

"The state and municipal corporation may have concurrent jurisdiction over the same subject matter and in which event the municipality may make regulations on the subject notwithstanding the existence of state regulations thereon, provided the regulations or laws are not in conflict.

"The mere fact that the state has legislated on a subject does not necessarily deprive a city of the power to deal with the subject by ordinance. 43 C.J., § 217, page 214; 62 C.J.S., Municipal Corporations, § 143, page 286; State v. Preston, 4 Idaho 215, 38 P. 694; State v. Musser, 67 Idaho 214, 176 P.2d 199; State v. Romich, 67 Idaho 229, 176 P.2d 204.

"A municipal corporation may exercise police power on the subjects connected with municipal concerns, which are also proper for state legislation.

"We therefore conclude that under the constitutional provision and legislative acts and authorities above quoted, the City of Pocatello had authority to enact and enforce the ordinance in question. * * *

"Appellant contends that no judgment was entered in the police court for which reason the district court never acquired jurisdiction to try him or to render judgment, or impose sentence. The docket entry of the police judge shows that the defendant entered a plea of not guilty, was found guilty and fined $100.00 and driver's license revoked for one year. This must be the judgment from which the appellant appealed.

The penalty in the ordinance does not provide for the revocation of the driver's license, but as the case was tried anew in the district court, the action of the police judge in this regard is not before us for review. The appeal here taken is from the judgment imposed by the district judge. We conclude that the district court had jurisdiction.''

For decisions from other jurisdictions that are in harmony see: Mares v. Kool, 51 N.M. 36, 177 P.2d 532; City of Clovis v. Dendy, 35 N.M. 347, 297 P. 141; State ex rel. Coffin v. McCall, 58 N.M. 534, 273 P.2d 642; Salt Lake City v. Kusse, 97 Utah 113, 93 P.2d 671; Salt Lake City v. Kusse, 97 Utah 97, 85 P.2d 802; Shaw v. City of Norfolk, 167 Va. 346, 189 S.E. 335; Kistler v. City of Warren, 58 Ohio App. 531, 16 N.E.2d 948; Village of Struthers v. Sokol, 108 Ohio St. 263, 140 N.E. 519; City of Aberdeen v. Forkel, 72 S.D. 536, 37 N.W.2d 407; City of Garden City v. Miller, 181 Kan. 360, 311 P.2d 306. Compare State v. Barry, 183 Kan. 792, 332 P.2d 549.

*Specification No. 2.* The appellant Ramsey's remaining specification of error is that neither the Police Court of the City of Bozeman nor the District Court for Gallatin County ''had jurisdiction over the appellant for the reason that the proceedings prior to bringing the appellant to trial in the police court were not had in accordance with the laws of the State of Montana which provide that a warrant must be issued in all cases brought before a police magistrate.''

In his brief on this appeal Ramsey contends ''that before the Police Court can obtain jurisdiction over the defendant, the police judge must issue a warrant pursuant to Section 94-100-2.''

Appellant further asserts: ''In the instant case, no warrant was ever issued and this fact prevents both the police court and the district court from having jurisdiction over the defendant even though he appeared and was tried in both courts.''

We do not so read the law.

In Vol. 1 of Alexander "The Law of Arrest", Chapter 5 at pp. 427-429, it is said:

"§ 74. Arrest Without a Warrant Is Expressly Authorized, and Directed by Statute, in Every State,—Which is Constitutional. * * *

"The object and purpose of this authority to arrest without a warrant is 'promptness' to secure the person of the criminal before he could escape, to better ensure his identification, and his being in the custody of the Law at the earliest moment after the commission of his crime.' * * *

" 'The only purpose of an arrest is to subject the accused to the custody of the law, which can be accomplished as effectively without a warrant as with one. * * * *Where one is in lawful custody, it is immaterial whether he was placed there peaceably or otherwise, and with or without a written order in a warrant.' "* Emphasis supplied.

Again in section 76 at pp. 430 and 435 of the same authority (Alexander) it is said:

"By statute everywhere officers and non-officers may arrest without a warrant any person who commits a felony in their presence. * * * (p. 430)

"By the same statutes authorizing an officer to arrest without a warrant for 'any crime' committed in his presence, is authorized, of course, arrest for misdemeanors." (p. 435)

Again Alexander, Chapter 6, § 91, at p. 473, states:

"§ 91. *Manner of Arrest.*

"As stated an arrest may be made peaceably or forcibly; by an officer or a non-officer; and with a warrant or without one.

" 'An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer.' "

*Montana Statutes on Arrest.* R.C.M.1947, § 94-6001, provides:

"An arrest is taking a person into custody in a case and

in the manner authorized by law. An arrest may be made by a peace officer or by a private person.''

R.C.M.1947, § 94-6002, in part, provides:

''An arrest is made by an actual restraint of the person of the defendant or by his submission to the custody of an officer. * * *''

R.C.M.1947, § 94-6003, in part, provides:

''A peace officer may * * * *without a warrant*, arrest a person—

''1. For a public offense committed or attempted in his presence; * * *'' Emphasis supplied.

R.C.M.1947, § 94-6006, provides that ''Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein.''

R.C.M.1947, § 94-6016, provides:

''When an arrest is made *without a warrant* by a peace officer or private person, the person arrested must, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the arrest is made, and a complaint, stating the charge against the person, must be made before such magistrate.'' Emphasis supplied.

From the record before us it is manifest that upon his apprehension on Saturday, August 29, 1959, the defendant Ramsey was promptly taken before Police Judge Robert M. Holter in Bozeman, he being the nearest and most accessible magistrate in the county in which the arrest was made, where report and complaint was made by the arresting officer purporting to state the charge against Ramsey. While the original complaint was hastily drawn and faulty, nevertheless while Ramsey was in custody and before him, the police judge required that Ramsey supply an appearance bond in the amount of $200 to obtain his release which amount Ramsey then and there posted and delivered to the police judge to insure his appearance at 8:30 on the following Monday morning, August 31, 1959, for arraignment or further hearing on the charge

made against him. Thus were all the requirements of section 94-6016, supra, fully complied with and met and that which might have been accomplished by means of a warrant of arrest, had the infraction or offense not been committed in the presence of the city police officer who made the arrest and who promptly took Ramsey to the City Police Court, was lawfully accomplished without any warrant of arrest and which procedure was and is just as effectual for the law does not require useless things.

The following maxims of jurisprudence are here applicable, viz.:

"The law neither does nor requires idle acts." R.C.M.1947, § 49-124.

"Interpretation must be reasonable." R.C.M.1947, § 49-134.

"The law respects form less than substance." R.C.M.1947, § 49-120.

"The law disregards trifles." R.C.M.1947, § 49-125.

"When the reason of a rule ceases, so should the rule." R.C.M.1947, § 49-102.

Notwithstanding the above statutory maxims of jurisprudence, the appellant Ramsey here contends that after he had been arrested by Police Officer Robert Johnson and after he had been conducted to the police court and to the presence of the police judge, that it became the duty of such police judge to then and there issue a warrant for Ramsey's arrest wherein the very policeman who had lawfully arrested the appellant and who then had him in actual and physical custody would be "commanded to arrest the above-named [Ralph Frederick Ramsey] and bring him to me [the Police Judge] forthwith at" Bozeman, Montana, pursuant to the provisions of R.C.M. 1947, § 94-100-2.

We find no merit in this contention. Ramsey had already been lawfully arrested and brought before the police judge, who at Ramsey's request then admitted him to bail to insure

his presence at and in the police court at the time set for his arraignment.

At the conclusion of the City's case in the trial *de novo* in the district court, Ramsey's counsel moved to dismiss the amended complaint on which Ramsey was then on trial. Among other grounds Ramsey's counsel stated to the trial judge that R.C.M.1947, § 94-100-2, "provides that a warrant must issue by the magistrate, and he must determine whether there is probable cause to issue a warrant * * * that is the city magistrate's job, to determine whether a crime has been committed. In other words, I can sign a complaint but I cannot issue a warrant as against a fellow citizen. *I know that any individual or an officer can arrest a fellow citizen if he is in a commission of a crime and he is observed, and take him before a magistrate. I know that.*" Emphasis supplied.

Thus did Ramsey's counsel concede Police Officer Johnson's authority under the law, to arrest Ramsey without a warrant and to take him before the police judge.

In 8 Blashfield's Cyclopedia of Automobile Law and Practice, § 5423, at pp. 315, 317, it is said:

"Owing to the facilities for escape ordinarily afforded by the possession of an automobile, the law giving an officer the right to arrest an offender without a warrant, for a criminal act committed in his presence, finds a peculiar application." [Note 24 at p. 315] * * *

"Arrests without warrants have been justified in cases * * * for operating a motor vehicle while intoxicated * * *" [Note 28 at p. 315] See: People v. Decker, 156 Misc. 156, 282 N.Y.S. 176; Hancock v. State, 80 Okl.Cr. 1, 156 P.2d 155; Ervin v. State, 196 Tenn. 459, 268 S.W.2d 351; Eddins v. State, 155 Tex.Cr.R. 202, 232 S.W.2d 676; Hicks v. State, 158 Tex.Cr.R. 45, 251 S.W.2d 409; McEathron v. State, 163 Tex.Cr.R. 619, 294 S.W.2d 822; McHone v. Commonwealth, 190 Va. 435, 57 S.E.2d 109; State v. Ray, 4 N.J.Misc. 493, 133 A. 486; State v. Murphy, 4 N.J.Misc. 957, 134 A. 900;

Noe v. Monmouth County Common Pleas Court, 6 N.J.Misc. 1016, 143 A. 750, affirmed in 106 N.J.L. 584, 150 A. 920; Edgin v. Talley, 169 Ark. 662, 276 S.W. 591, 42 A.L.R. 1194.

The Kentucky case of Murphy v. Thomas, Ky.1956, 296 S.W.2d 469, holds that where the act of speeding was committed in the presence of the arresting officer, a warrant of arrest was unnecessary and superfluous and that where the offender, after being apprehended escaped from custody the officer was authorized to pursue and retake such offender without a warrant.

In State v. Poynter, supra, the Supreme Court of Idaho said:

"Appellant further contends that at the time of the arrest he was taken to jail and confined without any warrant of arrest, or for any crime that had been committed in the presence of any officer, and that such arrest was illegal and void, and therefore by innuendo he could not be prosecuted. *Where the accused is personally before the court, the jurisdiction * * * to try him is not impaired by the manner in which he is brought before the court.*" Emphasis supplied. State v. Poynter, 70 Idaho 438, at page 443, 220 P.2d 386, at page 390.

In his brief on this appeal the appellant Ramsey cites and relies upon this court's opinions in City of Billings v. Herold, 130 Mont. 138, 296 P.2d 263. and Town of White Sulphur Springs v. Voise, 136 Mont. 1, 343 P.2d 855. Neither of these cases is in point. Neither involves the application or construction of the provisions of Chapter 263 of the Montana Session Laws of 1955, effective from and after July 1, 1955, nor of the provisions of Chapter 201 of the Montana Session Laws of 1957 amending designated sections of Chapter 263, supra, effective from and after March 9, 1957.

In Herold's case, supra, the act charged as violative of the Billings' traffic Ordinance No. 1839 is alleged to have been committed on November 10, 1951, being long prior to the en-

actment of either Chapter 263, Session Laws of 1955, or Chapter 201, Session Laws of 1957.

In Voise's case, supra, the act charged as violative of White Sulphur Springs' Ordinance No. 210 is alleged to have been committed on May 19, 1955, hence, prior to the effective date of either Chapter 263, Laws of 1955, or of Chapter 201, Laws of 1957.

Thus Chapter 263, Laws of 1955, as amended by Chapter 201, Laws of 1957, had no application whatever to either Herold's case nor to that of Voise.

The enactment of the 1955 Montana State Legislature of Chapter 263, supra, and this court's decision in the case of City of Billings v. Herold, supra, pronounced on April 20, 1956, proved to be quite disturbing to the finances of the various towns and cities of the state. To remedy this situation the officers and representatives of the municipalities presented their problem to the 1957 Montana State Legislature which lent an attentive ear and granted relief by the enactment of Chapter 201, Laws of 1957, wherein the Legislature expressly added new provisions to the police powers theretofore granted to the municipalities with respect to the violation of certain designated traffic regulations when such violations occurred within the limits and boundaries of such municipalities as had enacted lawful ordinances that conform with the state statutes on the subject. To such conforming municipalities the state through its 1957 Legislature granted *concurrent* jurisdiction to *share* in the prosecution of cases involving a violation of the specifically designated traffic regulations occurring within the boundaries of the conforming municipalities.

It is quite obvious that the City of Bozeman's motive in passing its drunken driving Ordinance No. 801, in substantially the same language of Chapter 201, Laws of 1957, passed, approved and effective but five months previous, was to enable the City of Bozeman to prosecute drunken driving offenses committed within its corporate limits, in the City Police Court

rather than in a justice court and, thus, keep the fines collected from those offending.

We hold that Chapter 263, Montana Session Laws of 1955, as amended by Chapter 201, Montana Session Laws of 1957, are valid enactments of the Legislature and that Bozeman's Ordinance No. 801 passed and adopted pursuant to the power and authority expressly granted in Chapter 201, Laws of 1957, is a valid ordinance empowering and enabling the City of Bozeman to exercise the *concurrent jurisdiction* so granted in Chapter 201, supra.

Finding no merit in the appellant's specifications of error and no prejudicial error in the record before us, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES CASTLES and JOHN C. HARRISON concur.